JOHN GERARD FINN AND BELINDA JO FINN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ANNA V. FINN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finn v. Commissioner
Docket Nos. 12940-84, 14596-84.
United States Tax Court
T.C. Memo 1986-332; 1986 Tax Ct. Memo LEXIS 273; 51 T.C.M. (CCH) 1654; T.C.M. (RIA) 86332; July 31, 1986. *273 H and W were divorced in 1977. In 1981, both claimed dependency deductions for their two children, who were in the custody of W. In that year, H furnished over $1,200 in support of each child. Held, W failed to prove that she provided more support for the children than did H; therefore H, not W, is entitled to claim the dependency deductions. Sec. 152(a)(2)(B), I.R.C. 1954. John Gerard Finn and Belinda Jo Finn, pro se in docket No. 12940-84. Anna V. Finn, pro se in docket No. 14596-84. Frank E. McDaniel, for the respondent. STERRETT
*274 MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket
Tax Year Ended
Date of
No.
Petitioner
December 31,
Deficiency
Notice
12940-84
John Gerard Finn and
Belinda Jo Finn [1]
1981
$511
2/15/84
14596-84
Anna V. Finn
1981
419
2/15/84
The sole issue before the Court is whether the custodial or noncustodial parent is entitled to the dependency deductions for their *275 two children. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner Anna V. Finn (hereinafter Anna) resided in Stone Mountain, Georgia and petitioner John Gerard Finn (hereinafter John) resided at Robins Air Force Base, Georgia at the time they filed their petitions in this case. Anna filed her Federal income tax return for the taxable year 1981 with the Internal Revenue Service Center in Chamblee, Georgia and John and his wife, Belinda Jo Finn, filed their joint Federal income tax return for the taxable year 1981 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. John and Anna were married in December 1971 and they subsequently were divorced on May 18, 1977. Two children were born of this marriage. Their daughter, Erin, was born in June 1974 and their son, Devin, was born in November 1975. Pursuant to the divorce decree, and at all relevant times, Anna had custody of the children and John had visitation rights. During the taxable year in issue, John made payments to Anna totaling $2,075 per child for child *276 support. In addition, the children visited John a total of 75 days and he incurred the following expenditures with respect to the children: Erin
Devin
Food
$243.06
$243.06
Vacation
42.24
42.24
Gifts
120.49
82.80
Clothes
23.00
13.00
Haircuts
9.50
9.50
Miscellaneous
57.59
47.98
Total [2]
$495.88
$438.58
During 1981, Anna and the children resided at Kristian Court in Stone Mountain. The residence was purchased by Anna with governmental assistance in 1980. In 1981, pursuant to the assistance plan, Anna made payments on the principal of the mortgage totaling $2,947.81 and the government made interest payments on the mortgage totaling $2,756.39. The Kristian Court residence has three bedrooms, one bathroom, a *277 basement, a small living room, a combined kitchen and dining area, and a one-car garage. During 1981, the fair rental value of the home was $560 per month, of which $271 [3] constitutes support provided by a government agency.In addition, Anna paid utility expenses for the residence totaling $1,178.52 and incurred and paid minor repair and replacement expenses for the residence totaling $411.46. Thus, the total amount relating to the residence, excluding governmental assistance, was $5,057.98. [4] Twenty percent of this amount, $1,011.60, represents the portion of Anna's cost in providing shelter that is allocable to each child. See pages 8-9, infra.
*278 The total support furnished by Anna for her children during 1981 was as follows: Erin
Devin
Residence
$1,011.60
$1,011.60
Food
587.00
495.55
Clothing
418.48
435.57
Automobile [5]
455.11
455.11
Medical
84.09
57.91
Haircuts
60.00
64.00
Child care
758.40
1,087.60
Entertainment
152.00
152.00
Gifts
27.88
Miscellaneous
85.94
89.86
$3,612.62
$3,877.08
Less John's
support payments
2,075.00
2,075.00
Total support
$1,537.62
$1,802.08
furnished by Anna
The total support furnished to the children during 1981 was as follows: Erin
Devin
John
$2,570.88
$2,513.58
Anna
1,537.62
1,802.08
Government assistance [6]
650.40
650.40
Total [7]
$4,758.90
$4,966.06
*279 For the taxable year ended December 31, 1981, both John and Anna claimed dependency deductions for their two children. In his statutory notices of deficiency, both dated February 15, 1984, respondent disallowed both of their claimed deductions. ULTIMATE FINDING OF FACT More than one-half of the amounts expended for the support of the two children during 1981 was furnished by John. OPINION We must determine whether John or Anna is entitled to the dependency deduction claimed for their two children. It is always regretable that cases such as this come to trial. Section 151(e) [8] provides for a dependency exemption for each dependent as defined in section 152. Section 152(a) defines the term "dependent" as including, inter alia, a son or daughter of the taxpayer over half of whose support [9] for the calendar year was received from the taxpayer. Generally, the taxpayer has the burden of proving the amount he or she contributed toward the support of the children and that the amount exceeded one-half of their total support. Vance v. Commissioner,36 T.C. 547, 549 (1961). However, section 152(e) provides, in part, that in the case of divorced parents a noncustodial *280 parent is entitled to the dependency exemption if he or she provided at least $1,200 during the calendar year toward each child's support, unless the custodial parent can "clearly establish" that he or she provided more support for the child during that year than did the noncustodial parent. Sec. 152(e)(2)(B). There is no dispute that John made payments during 1981 of over $1,200 toward each child's support. Thus, Anna must "clearly establish" that she provided more support for each child. *281 In order to "clearly establish" her support, she must show, by a clear preponderance of the evidence, that she provided more support than the noncustodial parent. Labay v. Commissioner,55 T.C. 6, 13 (1970), affd. per curiam 450 F.2d 280 (5th Cir. 1971). Anna maintains that she provided over half of the children's total support. In specific, she contends that the allocation of the housing costs should be pro rata and that the governmental assistance with respect to the mortgage interest payments does not constitute an item of support provided by a third party. We note that, even if the governmental assistance were not an item of support provided by a third party, [10] Anna still would not have provided over half of the children's support because of the 20-percent allocation per child of the housing costs. Thus, the critical argument that must be addressed is Anna's contention that the allocation of the housing costs should be pro rata and not 60 percent to herself and 20 percent to each child. *282 The house that Anna and the children resided in during 1981 had three bedrooms, one bathroom, a basement, a small living room, a combined kitchen and dining area, and a one-car garage. Anna testified that two of the three bedrooms were used by the children. She also testified that a portion of the basement was used as a playroom for the children to keep them out of the living room and that the other portion of the basement was utilized as a laundry room. Anna contends that this testimony clearly establishes that the housing costs should be allocated on a pro rata basis. We do not agree with Anna's contention as the evidence does not clearly establish that a pro rata allocation is warranted. While the children did have their own bedrooms and the use of a portion of the basement, the record is unclear with respect to the use, if any, they had of the living room and garage area. In fact, one could infer from Anna's testimony that the children did not have any use of the living room since her reason for using a portion of the basement as a playroom was to keep the children out of the living room. Anna's contention also fails to take into account the fact that an adult has certain *283 minimum base housing costs which are not equal to the minimum housing costs of minor children. On the record before us, we find that a more realistic allocation would be to credit Anna with 60 percent and each of the children with 20 percent of the housing costs. [11] Under this allocation, John provided over one-half of Erin's and Devin's support during the taxable year in issue. [12] To reflect the foregoing, *284 Decision will be entered for petitioner in docket No. 12940-84 and decision will be entered for respondent in docket No. 14596-84.
Footnotes
1. Belinda Jo Finn is a petitioner in this case solely because she was married to petitioner John Gerard Finn during the year in issue and filed a joint return with him for that year.↩
2. The total support furnished by John for Erin was $2,570.88 ($2,075.00 + $495.88) and the total support furnished by John for Devin was $2,513.58 ($2,075.00 + $438.58). John also spent, inter alia, $934.08 for airline tickets that were purchased to enable Erin and Devin to visit him during 1981. This expenditure does not constitute an item of support. Hopkins v. Commissioner,55 T.C. 538, 541-542↩ (1970).
3. The amount of support provided by the governmental agency was calculated as follows: monthly fair rental value of the home X house payments made by the government / total house payments made by the government and Anna $560 X $2,756.39/$5,704.20 = $271 (rounded to the nearest dollar) ↩
4. The $5,057.98 amount was arrived at in the following manner: ↩
Fair rental velue ($560 X 12)
$6,720.00
Utilities
1,178.52
Repairs and replacement
411.46
$8,309.98
Less Government assistance ($271 X 12)
3,252.00
$5,057.98
5. Our finding of the amount of this item of support reflects Anna's requested finding on brief, except that we have excluded the amount allocable to Anna's work-related travel (62.5 percent) and therefore considered only the amount properly allocable to non-work related travel (37.5 percent).↩
6. The amount of governmental assistance provided to each child was calculated as follows: yearly housing support provided by the government X percentage allocation ($271 X 12) X 20% = $650.40 ↩
7. Neither Erin nor Devin provided any amount towards their own support.↩
8. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue. ↩
9. Support includes expenditures for food, shelter (including utilities and repairs), clothing, medical, education, allowances, toys, church contributions and the like. Sec. 1.152-1(a)(2)(i), Income Tax Regs.; Svendsen v. Commissioner,T.C. Memo. 1978-503. Generally, the amount of the expenditure is its cost. Sec. 1.152-1(a)(2)(i), Income Tax Regs. However, the amount of shelter furnished as an item of support is measured by its fair rental value. Blarek v. Commissioner,23 T.C. 1037, 1039↩ (1955).
10. Contrary to Anna's contention, public assistance payments made by a governmental agency with respect to the mortgage on a taxpayer's residence constitutes support provided by the agency and not the taxpayer. Leggett v. Commissioner,T.C. Memo. 1976-7↩.
11. There are other cases in which we did not use a pro rata allocation. See McKay v. Commissioner,34 T.C. 1080 (1960); Svendsen v. Commissioner,T.C. Memo. 1978-503; Tharp v. Commissioner,T.C. Memo. 1977-36; Cameron v. Commissioner,T.C. Memo. 1974-166. It should be mentioned that, since the allocation of the housing costs is dispositive in the instant case, we accepted Anna's testimony that the fair rental value of her residence was $560 per month. We note, however, that her estimate was not supported in the record by any independent appraisals. Thus, were a determination of the fair rental value crucial to the outcome of this case, we seriously doubt that we would find its value to be $560 per month since that amount was not clearly established by Anna. ↩
12. Having found for John, we need not address his contentions with respect to certain items of support furnished by Anna. Such contentions include, but are not limited to, the proper amount of automobile expense. Likewise, while we discussed in footnote 3 the airplane fare incurred by John, we find it unnecessary to address the other items that were not deemed support furnished by him to his children.↩